

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

February 13, 1970

Honorable Robert S. Calvert
Comptroller of Public Accounts
State of Texas
Austin, Texas

Opinion No. M-573

Re: Can new owner of store operate until current license expires without a transfer of same on Comptroller's records, and does Comptroller have authority to transfer store license when presented after its expiration date?

Dear Mr. Calvert:

By recent letter you request of this office an opinion upon the following stated facts and questions:

In the case of <u>Hurt et al vs. Cooper et al</u>, 110 S.W.2d 896, the Court reached the conclusion that the Store Tax Law i.e. Chapter 17, Title 122A, Taxation-General, V.A.T.S. was an occupation tax. The Comptroller allowed a transfer of the Current License where a firm was purchased during the year to the new ownership.

Our opinion is requested on the following:

1. Can the new owner operating the purchased place of business continue to operate under the old owners license for the current year without the current license being transferred on the Comptroller's record prior to expiration.

2. Does the Comptroller under the Store Tax Law have the authority to transfer a Store License when presented after the expiration date of the license.

-2731-

The Texas Supreme Court case referred to by you, Hurt et al. v. Cooper et al., 130 Tex. 433, 110 S.W.2d 896 (1937), definitely established that our original Chain Store Tax Law, as then compiled in Article 1111d of Vernon's Annotated Penal Code of Texas, was a constitutionally valid levy of occupation taxes, although denominated therein as license fees. The principle relied upon by such Court to sustain this was their determination that the primary purpose of the fees provided in such statute was raising of revenue and not regulation.

This occupation tax law, substantially unchanged, was carried forward as Chapter 17, Title 122A, Taxation-General V.C.S. in a rearrangement of certain of the taxation statutes by the 56th Legislature at its Third Called Session in 1959.

Articles 17.01 - 17.06 of said Chapter 17 provide requirements for licenses, applications and fees for stores and mercantile establishments coming within the purview of said Chapter, but no provisions are set out for the transfer of a license from the original licensee to a subsequent purchaser of the business. Nevertheless this particular transaction is provided for in Articles 7055 and 7056, of Vernon's Civil Statutes. Such statutes are in pari materia with the occupation tax law in question, and they must be construed with reference to each other. Said Articles appear as follows:

"Art. 7055. Any person, firm, corporation, or association of persons, who shall be the legal owners or holders of any unexpired occupation license issued in accordance with the laws of this State, may transfer the same on the books of the officer by whom the same was issued. Acts 1885 p.27; G.L. vol. 9 p.647."

"Art. 7056. The assignee or purchaser of such unexpired occupation license shall be authorized to pursue such occupation under such unexpired license for and during the unexpired term thereof, provided that such assignee or purchaser shall, before following such occupation, comply in all other respects with the requirements of the law provided for in the original applications for such licenses. Nothing in this law shall be so construed as to authorize two or more persons, firms, corporations or associations of persons to follow the same occupation under one license at the same time. Whenever any person, firm, corporation or association

> of persons following an occupation shall be closed
> out by legal process, the occupation license shall
> be deemed an asset of said person, firm, corporation
> or association of persons, and sold as other prop-
> erty belonging to said person, firm, corporation, or
> association; and the purchaser thereof shall have the
> right to pursue the occupation named in said license,
> or transfer it to any other person; provided, such
> occupation license shall under no circumstances be
> transferred more than one time."

A full compliance with "the requirements of the law pro-
vided for in the original applications for such licenses,"
as required of the purchaser or assignee by said Art. 7056,
would seem to be reasonably satisfied by the purchaser or
assignee of such unexpired license making an application
or request to the Comptroller for a recognition of a valid
transfer or assignment of such license, giving the Comptrol-
ler the information required by him to determine the identity
and qualifications of the new holder of the assigned license
and the name and location of the business or businesses to be
operated by such assignee. However, we fail to find any pro-
visions of said statutes authorizing the Comptroller to force
the new owner to make such application or request, nor can we
find any penalty specifically prescribed for failing to make
such application or request. It should be observed that the
application or request by the new owner by purchase or assign-
ment for transfer of an unexpired license is not the application
contemplated or required by said Article 17.02 for the issuance
of an original license. We are not authorized to enlarge the
scope of said Article 17.02 so as to make it comprehend a request
or application growing out of an assignment or transfer of an
unexpired license. See Attorney General Opinion No. 0-1673 (1939).

On the particular point raised by your question No. 1,
we find the holding in the early case of Faulkner et al v.
Cassidy, 87 S.W. 904 (Tex.Civ.App. 1905 err.ref.) to be strongly
persuasive if not controlling. In this case the failure of a
purchaser of an unexpired liquor license to have the transfer
made on the books and to file an application designating the
particular house in which he proposed to conduct his business,
and to have such designation made in the license, did not
render his bond void. The statutes then in effect concerning
the transfer of occupation licenses were identical in terminol-
ogy with Articles 7055 and 7056. The Court stated in its opinion
that:

> "The criterion by which the validity of the
> bond in such cases is to be determined seems to

be, would the license under which the liquor
dealer sold protect him from a criminal pros-
ecution for selling liquor without a license?"

In holding the transferred license in question to be
valid in the face of non-compliance with the statutes con-
cerning the transfer of such license, the recording of same
on the books of the officer by whom it was issued and non-
compliance in other respects with the requirements of the law
provided for in the original application for such license,
the Court, in Faulkner v. Cassidy (supra) in effect, ruled
that such requirements are merely directory and not of such
dignity or import as to vitiate the rights otherwise confer-
red by such statutes on the purchasers or assignees of such
unexpired licenses transferred for the first time.

In view of the foregoing, it is our opinion that the
cogent reasoning of such authority is applicable and decisive
of the matter posed in your first question, and such question
is thereby answered in the affirmative.

All licenses issued to operate stores or mercantile
establishments in this State pursuant to said Chapter 17,
expire by the terms of Article 17.04 on the thirty-first day
of December of each year, and on or before that date the holders
thereof are required to apply for renewal licenses for the next
ensuing calendar year. Any holder of such a license which was
assigned to him during the current year, who seeks to have such
license duly transferred on the Comptroller's records during
the time the law provided for him to seek a renewal thereof,
is entitled to such transfer, and the Comptroller is authorized
to make the same on his records. Penalties are provided by
Article 17.04 if applications are made after such due date, or
not made at all. There is also prescribed in Article 17.09 of
said Chapter 17, Title 122A a criminal misdemeanor penalty for
anyone operating such stores or mercantile establishments with-
out having displayed in a conspicuous place in such store or
mercantile establishment the license fee receipt for the current
year.

It is apparent from the foregoing that the Legislature
in enacting the provisions contained in said Articles 17.02 and
17.04 regarding fees and/or penalties for belated or omitted
original and renewal applications, had the purpose of collection
of revenue rather than regulatory measures foremost in mind, and
thereby gave the Comptroller wide powers and authority in the
exercise of his duties to collect such taxes and civil penalties.

Unlike a strictly regulatory occupation tax, there are no express provisions in said Chapter 17, Title 122A, for the forfeiture of a license. On the contrary the entire thrust of the statutes seem to <u>require</u> the <u>holding</u> of a license by all who come within the <u>purview</u> of this law.

In view of the clear mandate of the statutes in question to the Comptroller to secure license fees from all such store operators, whether or not application is made by such store operators, it reasonably would appear to follow that the Comptroller, after collecting the fees and penalties, if any due, shall then issue renewal licenses to such store operators. This necessarily entails the recognizing and recording of a license transfer previously made by the original licensee to the present store operator, in order to issue a proper renewal license. This is so regardless of how late the application or request is made, or whether, in fact, it is made at all, but the Comptroller is not empowered to waive the civil penalties accruing by virtue of the recalcitrance of such store operator. It may be pointed out here that the actual <u>transfer</u> of a right or privilege to conduct the business under the original current license necessarily occurs before the license expires. This is done by the seller at the time he assigns the license to the purchaser. It is only the <u>recording</u> of such previous transfer that remains to be done by the Comptroller. If the Comptroller determines that no such transfer occured, then he can issue only an original license to the applicant upon the payment of the proper fees. It is in this sense that we consider the matters involved in this second question.

Therefore, your second question is also answered in the affirmative.

## S U M M A R Y

A person can purchase a business operated under an occupation license issued pursuant to Chapter 17 of Title 122A, Taxation-General, Vernon's Civil Statutes, and operate same until the license expires without such transfer being recorded in the Comptroller's records for the current year, provided such license is transferred or assigned to the purchaser along with

the business; and the Comptroller has the authority to recognize and record such transfer in his records after the expiration of such license.

Yours very truly,

Crawford C. Martin
Attorney General of Texas

Prepared by R. L. Lattimore
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

Steve Hollahan
Jay Floyd
Charles Lind
Camm Lary

Meade F. Griffin
Staff Legal Assistant

Alfred Walker
Executive Assistant

Nola White
First Assistant Attorney General